## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL KENT, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT FOR VIOLATIONS** |
| | ) | **OF THE FEDERAL SECURITIES** |
| | ) | **LAWS** |
| TURNING POINT THERAPEUTICS, INC., | ) | |
| MARK J. ALLES, BARBARA W. BODEM, | ) | JURY TRIAL DEMANDED |
| ATHENA COUNTOURIOTIS, PATRICK | ) | |
| MACHADO, GARRY NICHOLSON, | ) | |
| SIMEON J. GEORGE, and CAROL | ) | |
| GALLAGHER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Michael Kent ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Turning Point Therapeutics, Inc. ("Turning Point" or the "Company") and its corporate directors for violating 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Turning Point to Bristol-Myers Squibb Company ("Bristol-Myers Squibb") (the "Proposed Transaction").

2. On June 2, 2022, Turning Point entered into an Agreement and Plan of Merger with Bristol-Myers Squibb and its wholly owned subsidiary, Rhumba Merger Sub Inc. ("Purchaser") (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Bristol-Myers Squibb will acquire Turning Point for $76.00 in cash per share of Turning Point common stock

via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on June 17, 2022.

3.      On June 17, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Turning Point stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (a) the Company's financial projections; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"); (c) the background of the Proposed Transaction; and (d) Company insiders' potential conflicts of interest.

4.      It is imperative that the material information omitted from the Recommendation Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.[1]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

---

[1] The Tender Offer is currently scheduled to expire at one minute following 11:59 p.m., Eastern Time, on July 18, 2022.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of shares of Turning Point common stock.

10.     Defendant Turning Point is a Delaware corporation, with its principal executive offices located at 10628 Science Center Drive, Suite 200, San Diego, California 92121.  Turning Point's shares trade on the Nasdaq Global Select Market under the ticker symbol "TPTX."

11.     Defendant Mark J. Alles has been Chairman of the Board and a director of the Company at all relevant times.

12.     Defendant Barbara W. Bodem is and has been a director of the Company at all relevant times.

13.     Defendant Athena Countouriotis has been Chief Executive Officer, President, and a director of the Company at all relevant times.

14.     Defendant Patrick Machado is and has been a director of the Company at all relevant times.

3

15.     Defendant Garry Nicholson is and has been a director of the Company at all relevant times.

16.     Defendant Simeon J. George is and has been a director of the Company at all relevant times.

17.     Defendant Carol Gallagher is and has been a director of the Company at all relevant times.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19.     On June 3, 2022, Turning Point announced that it had entered into the Proposed Transaction, stating, in relevant part:

> (NEW YORK & SAN DIEGO, June 3, 2022) – http://www.bms.com/ (NYSE:BMY) and Turning Point Therapeutics, Inc. (NASDAQ:TPTX) today announced a definitive merger agreement under which Bristol Myers Squibb will acquire Turning Point Therapeutics for $76.00 per share. The transaction was unanimously approved by both the Bristol Myers Squibb and Turning Point Therapeutics Boards of Directors and is anticipated to close during the third quarter of 2022.
>
> Turning Point Therapeutics is a clinical-stage precision oncology company with a pipeline of investigational medicines designed to target the most common mutations associated with oncogenesis. Turning Point Therapeutics' lead asset, repotrectinib, is a next-generation, potential best-in-class tyrosine kinase inhibitor (TKI) targeting the ROS1 and NTRK oncogenic drivers of non-small cell lung cancer (NSCLC) and other advanced solid tumors. Repotrectinib has been granted three Breakthrough Therapy Designations from the U.S. Food and Drug Administration. In the Phase 1/2 TRIDENT-1 clinical trial, longer duration of response has been observed in the landmark analysis with repotrectinib than with existing ROS1 agents in first-line NSCLC.
>
> Bristol Myers Squibb expects repotrectinib to be approved in the U.S. in the second half of 2023 and become a new standard of care for patients with ROS1-positive

NSCLC in the first-line setting. The company also plans to continue to explore the potential of Turning Point Therapeutics' promising pipeline of novel compounds.

"The acquisition of Turning Point Therapeutics further broadens our leading oncology franchise by adding a best-in-class, late-stage precision oncology asset," said Giovanni Caforio, M.D., Board Chair and Chief Executive Officer, Bristol Myers Squibb. "With this transaction, we are continuing our strong track record of strategic business development to further enhance our growth profile."

"Today's news builds upon our long legacy of pioneering next-generation medicines for patients with cancer," said Samit Hirawat, M.D., Chief Medical Officer, Global Drug Development, Bristol Myers Squibb. "With repotrectinib, we have the opportunity to change the standard of care and address a significant unmet medical need for ROS1-positive non-small cell lung cancer patients."

"Through this transaction, we will be able to harness the full potential of our precision oncology platform to advance the standard of care for cancer patients. Since our founding, we have leveraged our deep scientific expertise to develop a pipeline of promising precision oncology assets," said Athena Countouriotis, M.D., President and Chief Executive Officer, Turning Point Therapeutics. "With Bristol Myers Squibb's leadership in oncology, strong commercial capabilities and manufacturing footprint, we will be able to further accelerate the pace at which we can bring our novel medicines to benefit people diagnosed with cancer around the world."

**Financial Details and 2022 Financial Guidance**

The transaction supports Bristol Myers Squibb's medium- to long-term growth strategy with accretion to non-GAAP earnings per share (EPS) beginning in 2025. The transaction is expected to be up to $0.08 per share dilutive to non-GAAP EPS in 2022 prior to any impact from an acquired in-process research and development charge based on final accounting treatment. The accounting treatment as a business combination or asset acquisition will be determined upon the expected close of the transaction in the third quarter of 2022.

**Transaction Terms and Financing**

Under the terms of the merger agreement, Bristol Myers Squibb will promptly commence a tender offer to acquire all of the outstanding shares of Turning Point Therapeutics' common stock at a price of $76.00 per share in an all-cash transaction for a total consideration of $4.1 billion in equity value. Turning Point Therapeutics' Board of Directors unanimously recommends that Turning Point Therapeutics shareholders tender their shares in the tender offer.

The transaction is subject to customary closing conditions, including the tender of a majority of the outstanding shares of Turning Point Therapeutics' common stock

and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the successful closing of the tender offer, Bristol Myers Squibb will acquire all remaining shares of Turning Point Therapeutics that are not tendered into the tender offer through a second-step merger at the same price of $76.00 per share.

Bristol Myers Squibb expects to finance the acquisition with cash on hand.

## The Materially Incomplete and Misleading Recommendation Statement

20.     On June 17, 2022, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Recommendation Statement, which recommends that Turning Point stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial projections; (b) the financial analyses that support the fairness opinion provided by Goldman Sachs; (c) the background of the Proposed Transaction; and (d) Company insiders' potential conflicts of interest.

### *Material Misrepresentations and/or Omissions Concerning Turning Point's Financial Projections*

21.     The Recommendation Statement fails to disclose material information concerning the financial projections for Turning Point.

22.     For example, the Recommendation Statement sets forth that at a May 18, 2022 meeting between the Corporate Strategy Committee of the Board (the "Committee") and Turning Point senior management, Turning Point senior management:

> discussed further revisions to Turning Point's management projections the Board had previously approved, to include the effect of capital expenditures and depreciation and amortization on cash flows, to extend the years covered in the projections from 2044 to 2046 and to *update revenue estimates for new assets generated through the Turning Point platform*.  The Committee authorized the revisions to the management projections.

Recommendation Statement at 16-17 (emphasis added).  The Recommendation Statement, however, fails to disclose: (a) the Company's initial projected revenue estimates prepared in connection with the "May Forecasts" and any other financial projection metrics prepared in connection with the "May Forecasts"; (b) quantification of the revisions made to the "May Forecasts" discussed at the May 18, 2022 meeting; and (c) whether the full Board approved the revisions to the Company's financial projections discussed at the May 18, 2022 Committee meeting.

23.     Additionally, the Recommendation Statement fails to disclose the Company's stock-based compensation expense over the projection period and the updated fully diluted share count, discussed by the Board at its June 2, 2022 Board meeting.  *See id.* at 19.

24.     Moreover, with respect to the Company's "May Forecasts" and "Projections," the Recommendation Statement fails to disclose the line items underlying the Company's: (a) Unlevered Free Cash Flow; and (b) NOPAT, as applicable.

***Material Misrepresentations and/or Omissions Concerning Goldman Sachs' Financial Analyses***

25.     The Recommendation Statement fails to disclose material information concerning the financial analyses performed by the Company's financial advisor, Goldman Sachs.

26.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose a quantification of: (a) the terminal year estimate of the free cash flow to be generated by Turning Point; (b) the Company's terminal values; (c) the inputs and assumptions underlying the discount rate range of 10.5% to 12.5%; and (d) the net cash balance of Turning Point as of March 31, 2022 pro forma for in-license on TPX-4589.

***Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction***

27.     The Recommendation Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

28.     The Recommendation Statement fails to disclose whether the non-disclosures agreements ("NDAs") the Company entered into with potential buyers, including but not limited to the nine potential buyers that executed NDAs in connection with Goldman Sachs' February 2022 outreach process, include a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding any of the parties from submitting a topping bid for the Company.

***Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest***

29.     The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

30.     The Recommendation Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Bristol-Myers Squibb and Turning Point's executive officers, including who participated in all such communications, when they occurred and their content.

31.     Additionally, the Recommendation Statement fails to disclose whether any of Bristol-Myers Squibb's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

32.     In sum, the omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of Goldman Sachs & Co. LLC," "Background of the Offer and the Merger" and "Potential for Future Arrangements" sections of the Recommendation

Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent

disclosure of the foregoing material information prior to the expiration of the Tender Offer,

Plaintiff and the other stockholders of Turning Point will be unable to make a sufficiently informed

decision in connection with the Tender Offer and are thus threatened with irreparable harm

warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Claims Against All Defendants for Violations of Section 14(d) of the
Exchange Act and SEC Rule 14d-9 Promulgated Thereunder**

33.     Plaintiff repeats all previous allegations as if set forth in full.

34.     Defendants have caused the Recommendation Statement to be issued with the

intention of soliciting Turning Point stockholders to tender their shares in the Tender Offer.

35.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder

require full and complete disclosure in connection with tender offers.

36.     Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or
reject a tender offer or request or invitation for tenders shall be made in accordance
with such rules and regulations as the Commission may prescribe as necessary or
appropriate in the public interest or for the protection of investors.

37.     SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in
section 14(d)(1) of the Act with respect to a tender offer for such securities shall
include the name of the person making such solicitation or recommendation and
the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101)
or a fair and adequate summary thereof[.]

38.     Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such

additional material information, if any, as may be necessary to make the required statements, in

light of the circumstances under which they are made, not materially misleading."

39.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

40.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

41.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Turning Point, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

42.     Plaintiff repeats all previous allegations as if set forth in full.

43.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any

solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

44.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Turning Point stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.  Specifically, the Recommendation Statement misrepresented and/or omitted material facts concerning the Company's financial projections, Goldman Sachs' financial analyses, the background of the Proposed Transaction, and Company insiders' potential conflicts of interest.

45.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

46.    As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

47.    Plaintiff repeats all previous allegations as if set forth in full.

48.    The Individual Defendants acted as controlling persons of Turning Point within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Turning Point, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Recommendation Statement.

51.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue

of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Turning Point stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Turning Point, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  June 29, 2022

**LONG LAW, LLC**

By  */s/ Brian D. Long*
_____
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*